1   **ROBERT FABELA, CITY ATTORNEY**
    **MOSES W. JOHNSON, IV – State Bar No. 118769**
2   **Assistant City Attorney**
    **200 S. Anaheim Boulevard, Suite 356**
3   **Anaheim, CA  92805**
    **(714) 765-5169 / (714) 765-5123 [Fax]**
4   **mjohnson@anaheim.net**

5   **STEVEN J. ROTHANS – State Bar No. 106579**
    **JILL WILLIAMS – State Bar No. 221793**
6   **CARPENTER, ROTHANS & DUMONT LLP**
    **500 S. Grand Avenue, 19th Floor**
7   **Los Angeles, CA  90071**
    **(213) 228-0400 / (213) 228-0401 [Fax]**
8   **srothans@crdlaw.com / jwilliams@crdlaw.com**

9   Attorneys for Defendants

10               **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12

13  FERMIN VINCENT VALENZUELA          )   Case No. SACV17-00278 CJC (DFMx)
                                       )
14            Plaintiff,               )   **NOTICE OF MOTION AND**
                                       )   **MOTION IN LIMINE TO**
15       vs.                           )   **EXCLUDE EVIDENCE,**
                                       )   **ARGUMENT OR TESTIMONY**
16  CITY OF ANAHEIM, an entity; CITY   )   **FROM DR. ARUNA SINGHANIA**
    OF ANAHEIM POLICE                  )   **CONCERNING HER OPINIONS**
17  DEPARTMENT; RAUL QUEZADA,          )   **RELATING TO TOXICOLOGY**
    individually and as Chief of Police; )   **AND POLICE PRACTICES;**
18  DANIEL WOLFE; WOOJIN JUN and       )   **DECLARATION OF JILL**
    Does 1 through 10, individually as )   **WILLIAMS**
19  peace officers, inclusive,         )
                                       )   **Motion in Limine #4**
20            Defendants.              )
                                       )   Date:  March 25, 2019
21  _____)   Time:  3:00 p.m.
                                       )   Location:  7C
22  AND ALL RELATED ACTIONS.           )
                                       )   Discovery Cut-Off: November 23, 2018
23                                     )   Pre-Trial Conf.: March 25, 2019
                                       )   Trial: April 2, 2019
24  _____)

25       PLEASE TAKE NOTICE that on March 25, 2019, at 3:00 p.m. in

26  Courtroom 7C of the United States District Court, located at 350 West First Street,

27  Los Angeles, California 90012, Defendants City of Anaheim, former Chief Raul

28  Quezada, Sergeant Daniel Gonzalez, Officer Woojin Jun and Officer Daniel Wolfe

- 1 -

will and hereby do move this Court for an order excluding any evidence, argument or testimony from Dr. Aruna Singhania concerning: (1) her opinions on the levels of methamphetamine and amphetamine found in the decedent's body and (2) her opinions on police practices and neck restraints.

This motion is made on the grounds that Dr. Singhania herself acknowledged at deposition that she is not an expert in the fields of toxicology or police practices.  Thus, any opinions related to those fields should be inadmissible.  See FED. R. EVID. 702.  Moreover, the admission of opinions offered by Dr. Singhania regarding toxicology issues and police practices would be irrelevant and would unfairly prejudice the defendants at the time of trial.  See FED. R. EVID. 401, 402, 403.

This motion follows a pre-filing conference of counsel under Local Rule 7-3, which occurred on February 19, 2019.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jill Williams, any matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court.

DATED:   February 25, 2019          CARPENTER, ROTHANS & DUMONT

                                                    /s/  Jill Williams
                                          By: _____
                                                Steven J. Rothans
                                                Jill Williams
                                                Attorneys for Defendants

DEFENDANTS' MOTION IN LIMINE #4

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................1

II.     EVIDENCE AT ISSUE ............................................................................1

        A.      Police Practices / Use of Carotid Restraint Hold............................2

        B.      Toxicology .......................................................................................4

III.    ARGUMENT .............................................................................................6

        A.      The Court Has The Inherent Power To Hear And Determine Issues
                Of Admissibility Of Evidence Outside The Presence Or Hearing Of
                The Jury ...........................................................................................6

        B.      Dr. Aruna Singhania's Opinions About Toxicology And Police
                Practices Issues Are Inadmissible Because She Is Not An Expert
                In Either Field And Is Unqualified To Render Such Opinions .......7

        C.      Any Opinions Offered By Dr. Aruna Singhania Regarding
                Toxicology And Police Practices Issues Are Irrelevant And
                Prejudicial .....................................................................................10

IV.     CONCLUSION .......................................................................................12

TABLES OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

Ballou v. Henri Studios,
  656 F.2d 1147 (5th Cir. 1981) ........................................................11

Brandom v. United States,
  431 F.2d 1391 (7th Cir. 1970) ........................................................11

Daubert v. Merrel Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993) ....................................................................7, 8

General Electric Co. v. Joiner,
  522 U.S. 136 (1997) ..........................................................................9

Kumho Tire Co., Ltd. v. Carmichael,
  526 U.S. 137 (1999) ......................................................................8, 9

Liew v. Official Receiver and Liquidator,
  685 F. 2d 1192 (9th Cir. 1982) ....................................................11

Luce v. United States,
  469 U.S. 38 (1984) ............................................................................6

Old Chief v. United States,
  519 U.S. 172 (1997)....................................................................7, 11

Unisys Sav. Plan Litig.,
  173 F.3d 145 (3rd Cir. 1999) ..........................................................9

United States v. Chischilly,
  30 F.3d 1144 (9th Cir.1994)............................................................9

United States v. Finley,
  301 F.3d 1000 (9th Cir. 2002) ....................................................7, 8

United States v. Hankey,
  203 F.3d 1160 (9th Cir. 2000) ........................................................9

United States v. Komisaruk,
   885 F.2d 490 (9th Cir. 2004).........................................................................6

United States v. Morales,
   108 F.3d 1031 (9th Cir.1997) ......................................................................7

United States v. Schaff,
   948 F.2d 501 (9th Cir. 1991)......................................................................10

United States v. Soulard,
   730 F.2d 1292 (9th Cir. 1984) .....................................................................7

United States v. Varela-Rivera,
   279 F.3d 1174 (9th Cir. 2002)......................................................................7

**Statutes**
Fed. R. Evid. 103.................................................................................................6

Fed. R. Evid. 104.................................................................................................6

Fed. R. Evid. 401...........................................................................................7, 10

Fed. R. Evid. 402...............................................................................................10

Fed. R. Evid. 403...........................................................................................7, 11

Fed. R. Evid. 702.................................................................................................7

TABLES OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On July 2, 2016, the Anaheim Police Department received a call from a woman who reported that a man was following her mother and was loitering in front of their house.  APD Officers Daniel Wolfe and Woojin Jun responded. When the officers located the man [later identified as Fermin Vincent Valenzuela] inside a nearby laundromat, they greeted him with a "Howdy.  You alright?"  As the officers approached, Valenzuela (who was under the influence of methamphetamine) broke his glass methamphetamine pipe with his hand and began reaching into a duffel bag with tools inside.  The officers ordered Valenzuela to stop and put his hands behind his back so that they secure the scene and investigate the report to which they were responding, but Valenzuela was not cooperative.  Valenzuela pulled away from the officers and a protracted physical struggle ensued.  It was not until Valenzuela ran across the street, tripped over a curb, and Officer Wolfe applied the carotid restraint hold that the officers were finally able to restrain Valenzuela in handcuffs.  Valenzuela never regained consciousness and died eight days later, on July 10, 2016.

In these consolidated lawsuits, the plaintiffs have designated Dr. Aruna Singhania, the physician who performed the autopsy on the decedent, as a non-retained expert.  Based on questioning that occurred during Dr. Singhania's deposition, it is anticipated that the plaintiffs may attempt to elicit opinions from Dr. Singhania at trial regarding toxicology and police practices.  However, because Dr. Singhania is unqualified to render such opinions and where such opinions are irrelevant and prejudicial, defendants seek to preclude any such evidence, testimony or argument.

### II.   EVIDENCE AT ISSUE

On January 14, 2019, the plaintiffs served their Disclosure of Expert Witnesses on the defendants.  See Exhibit "A."  One of the non-retained experts

- 1 -

1 identified by the plaintiffs is Dr. Aruna Singhania.  The plaintiffs indicate that Dr.

2 Singhania is expected to testify as to the following matters at trial:

3        • Findings and results of the autopsy performed on Fermin Vincent

4          Valenzuela II

5        • That Mr. Valenzuela died from complications of asphyxia during a

6          struggle with law enforcement officers

7        • The contents of the Coroner's file on Mr. Valenzuela

8        • Conversations she had with the Coroner's investigator and Anaheim

9          Police Department investigators

10     On November 28, 2018, the deposition of Dr. Singhania was conducted in

11 this matter.  During her deposition, Dr. Singhania was asked questions about and

12 provided testimony relating to toxicology and police practices issues that fall

13 outside her area of expertise.  The following are the types of questions and

14 testimony concerning these issues:

15     **A.**     **Police Practices/Use of Carotid Restraint Hold**

16         Q: During that preautopsy meeting were you ever told

17 that a chokehold was used on Mr. Valenzuela?

18         A: I know the carotid hold and chokehold.  I don't even -

19 - I know there's a neck hold, which is whatever you call that,

20 that was used.

21         Q: Okay.  So at the time you performed your autopsy you

22 understood that some type of a neck hold had been used by the

23 officers?

24         A: That's correct.

25         Q: And other than describing it as some type of a neck

26 hold, you don't know what type of a hold they did?

27     A:    Well, it's a - - they - - they call as a carotid hold.  **But**

28 **again I'm not an expert in that field**.  I just know trachea - -

1    there's a neck - - neck hold was applied, and - - and it was

2    applied twice, once before he - - he was become unconscious,

3    then - - then the next time was applied.  So twice it was applied.

4    See Exh. B (Singhania Depo., 11:20-12:13) (emphasis added).

5              Q: Do you have an understanding as to what occurred

6    prior to the time that the police officers encountered Mr.

7    Valenzuela?  In other words, why were they talking to him, do

8    you know?

9              A: I - - I just know that - - again I don't know the real

10   detail.  The only I will give you the very small briefly because I

11   have no idea what - - because I was not there.  So the only thing

12   is like he was - - I mean, the - - he - - police officer was called

13   by somebody that person is following - - this person is Mr.

14   Valenzuela following the mother of somebody.  And then the

15   officer arrives and he - - he sees that Valenzuela was outside

16   the house.  And then he started walking to the Laundromat and

17   there's some struggle went through the Laundromat and the

18   Laundromat to the outside, the street.  And then it goes to the 7-

19   Eleven, and then that's - - as I said, I know just a little bit here

20   and there.

21   Id. at 21:22-22:15.

22             Q: If I understood the first part of your answer, the

23   process by which the officers placed their arms around Mr.

24   Valenzuela's neck and squeezed to the point they fractured his

25   hyoid bone, that would have caused difficulty breathing?

26             A: That's correct.

27   Id. at 52:23-53:3.

28

DEFENDANTS' MOTION IN LIMINE #4

1    Q: And you concluded that the fracture of the hyoid was

2    caused by the police officers, correct?

3    A: Again there's - - combination is most likely that time,

4    and that's all I can say.  When you put the neck hold and - - or a

5    carotid hold that's probably where the fracture happened.  **But I**

6    **cannot say definitely that's what happened**.

7    Id. at 61:4-10 (emphasis added).

8    **B.    Toxicology**

9    Q: Do you know how many times Mr. Valenzuela's

10    blood was tested by toxicology?

11    A: I'm not a toxicologist.  I just see the report.

12    Q: The report that we have here as page 14, had you - -

13    did you do anything to create the report?

14    A: No.

15    Id. at 62:7-12.

16    Q: Did you do anything to verify the findings in this

17    [toxicology] report?

18    A: I mean - - they are the toxicologists.  They are - - how

19    I can verify somebody else's report?

20    Q: That's what I am asking, if you did anything at all?

21    A: No, I did nothing.

22    Q: So you just obtained the report, and you included it

23    within your report?

24    A: That's correct.

25    Id. at 63:9-18.

26    Q: The amounts of amphetamine and methamphetamine

27    in his system, are you qualified to give an opinion as to what

28    those amounts represent?

- 4 -

1      A:     I'm not qualified.

2      Q:     Do you have any toxicological training at all?

3      A:     I have a basic.

4   <u>Id.</u> at 63:24-64:4.

5      Q:     Are you qualified to tell me when Mr. Valenzuela

6      took methamphetamine or amphetamine?

7      A:     No.

8      Q:     Can you tell me what dosage he took?

9      A:     No.

10     Q:     Can you tell me the strength of what he took?

11     A:     No.

12     Q:     Can you tell me the purity of what he took?

13     A:     No.

14  <u>Id.</u> at 65:21-66:4.

15     Q: The amounts of drugs of the amphetamine and

16     methamphetamine that this report reflects, do you know if that

17     had any effect on Mr. Valenzuela at the time of his interaction

18     with this police officers?

19     A: Again it is always - - there's no blood level.  People

20     act differently, everybody is different, whether there are

21     some people act differently with the higher levels, some

22     people lower.  What is the level for him, I have no idea.

23  <u>Id.</u> at 66:14-22.

24     Q: Are you familiar with the literature about the different

25     levels of methamphetamine or drugs in a person's body?  In

26     other words, there's a recreational level, a lethal level and

27     different levels?

28     A: I mean, again, as I said, I'm familiar but not enough.

- 5 -

DEFENDANTS' MOTION IN LIMINE #4

1      **I mean, I'm not an expert in that field.**

2               Q: Okay.  So are you capable of saying that the amount

3      of methamphetamine in Mr. Valenzuela's body at the time of

4      his death contributed to his death?

5               A: Again I - - I'm not saying that it did not.  It

6      contributed, it is together with his - - his behavior in me - -

7      in my opinion is because methamphetamine in the system.

8      <u>Id.</u> at 71:8-22 (emphasis added).

9               The defendants anticipate that at the trial of this action, plaintiffs' counsel

10     will attempt to introduce some or all of these types of opinions from Dr. Singhania.

11     Not only has Dr. Singhania acknowledged that she is not an expert in either

12     toxicology or police practices.  Therefore, not only is she unqualified to render

13     opinions concerning these fields/issues, but such opinions would be irrelevant and

14     unfairly prejudicial to defendants if admitted at trial.  By way of this motion,

15     defendants seek to exclude any evidence, argument or testimony relating to Dr.

16     Singhania's opinions on toxicology matters and police practices.

17     **III.   <u>ARGUMENT</u>**

18         **A.   <u>The Court Has The Inherent Power To Hear And Determine Issues</u>**

19              **<u>Of Admissibility Of Evidence Outside The Presence Or Hearing Of</u>**

20              **<u>The Jury.</u>**

21              While not expressly authorized by statute, motions in limine are commonly

22     used trial tools that are entertained and granted within the trial court's inherent

23     powers.  <u>Luce v. United States</u>, 469 U.S. 38, 41 (1984); <u>United States v.</u>

24     <u>Komisaruk</u>, 885 F.2d 490, 492-95 (9th Cir. 2004).  The underlying basis for

25     motions in limine can be found in the Federal Rules of Evidence.

26              Rules 103(c) and 104(c) allow a court to hear and determine the question of

27     the admissibility of evidence outside the presence or hearing of the jury.  <u>See</u> F ED.

28     R. E VID. 103(c), 104(c); <u>see also</u> <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.</u>,

DEFENDANTS' MOTION IN LIMINE #4

1  509 U.S. 579, 583-95 (1993) (before allowing scientific evidence to be admitted,

2  the trial judge must make a preliminary finding that the evidence is reliable and

3  relevant); United States v. Soulard, 730 F.2d 1292, 1297-98 (9th Cir. 1984) (trial

4  court properly reviewed a summary chart outside of the jury's presence, before

5  allowing it to be used at the trial).

6      Furthermore, Rule 402 supports the exclusion of irrelevant evidence—

7  predicated upon the definition of "relevant evidence" provided in Rule 401—while

8  Rule 403 is an important provision which empowers the court to exclude evidence

9  where the probative value is substantially outweighed by the danger of undue

10  prejudice, confusion of the issues, misleading the jury, or waste of time.  See FED.

11  R. EVID. 401 – 403; Advisory Com. Notes to FED. R. EVID. 403 ("'unfair

12  prejudice' . . . means an undue tendency to suggest decision on an improper basis,

13  commonly, though not necessarily, an emotional one"); see also Old Chief v.

14  United States, 519 U.S. 172, 180-92 (1997); United States v. Varela-Rivera, 279

15  F.3d 1174, 1179 (9th Cir. 2002).

16      Therefore, this Court has the inherent power to grant the instant motion in

17  limine.

18      **B.    Dr. Aruna Singhania's Opinions About Toxicology And Police**

19  **Practices Issues Are Inadmissible Because She Is Not An Expert**

20  **In Either Field And Is Unqualified To Render Such Opinions.**

21      Rule 702 of the Federal Rules of Evidence governs the admissibility of

22  expert testimony. The rule sets forth three distinct but related requirements: "(1)

23  the subject matter at issue must be beyond the common knowledge of the average

24  layman; (2) the witness must have sufficient expertise; and (3) the state of the

25  pertinent art or scientific knowledge permits the assertion of a reasonable opinion."

26  United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002); see also United

27  States v. Morales, 108 F.3d 1031 (9th Cir.1997).

28

DEFENDANTS' MOTION IN LIMINE #4

In <u>Daubert</u>, *supra*, 509 U.S. 579, the Supreme Court held that "Federal Rule of Evidence 702 imposes an obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.' " <u>Id</u>. at 589. The Court articulated a two-step inquiry for determining whether scientific evidence or testimony is admissible. "First, the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"   <u>Finley</u>, *supra,* 301 F.3d 1008 (*quoting* <u>Daubert</u>, *supra,* 509 U.S. at 592-93). "Second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact." <u>Id</u>.

Under the reliability prong, a court should consider a non-exhaustive list of factors in order to determine whether expert testimony is sufficiently reliable to be admitted into evidence. These include: (1) whether the theory or technique can be, or has been, tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted by the scientific community.  <u>Daubert</u>, *supra,* 509 U.S. at 593-94.  The Court in <u>Daubert</u> emphasized that the analysis is a "flexible" one, and that its "overarching subject" is the "evidentiary relevance and reliability . . . of the principles that underlie a proposed submission." <u>Id</u>. at 594-95. In <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), the Court clarified that the district court's "basic gatekeeping obligation . . . applies to all expert testimony," not just scientifically-based testimony.  <u>Kumho</u>, *supra,* 526 U.S. at 147.

 "Thus, admissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under FRE 104(a).

- Whether the opinion is based on scientific, technical, or other specialized knowledge;

DEFENDANTS' MOTION IN LIMINE #4

- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter. FRE 702; <u>Jones v. Lincoln Elec. Co.</u>, 188 F.3d 709 (7th Cir.1999); <u>see Wilson v. Woods</u>, 163 F.3d 935 (5th Cir.1999) (expert in fire reconstruction unqualified as expert in auto accident reconstruction).
- Whether the testimony is relevant and reliable. <u>Unisys Sav. Plan Litig.</u>, 173 F.3d 145, 155 (3rd Cir. 1999); <u>Kumho Tire</u>, 119 S.Ct. at 1174–75.
- Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury).  <u>General Electric Co. v. Joiner</u>, 522 U.S. 136 (1997).
- Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. FRE 403; <u>United States v. Chischilly</u>, 30 F.3d 1144, 1156 (9th Cir.1994)."

<u>United States v. Hankey</u>, 203 F.3d 1160, 1168 (9th Cir. 2000).

When evaluating these factors, it is clear that Dr. Aruna Singhania should not be allowed to render expert opinions and testimony regarding toxicology and police practices issues, for various reasons.  First, per her own admission, Dr. Singhania does not have 'specialized knowledge' regarding toxicology and police practices issues.  Because she does not have 'specialized knowledge,' Dr. Singhania's opinions about toxicology and police practices issues will not assist the trier of fact.

Second, per her own admission, Dr. Singhania does not have appropriate qualifications to render expert opinions on toxicology and police practices.

Third, Dr. Singhania cannot be said to have any 'relevant' or 'reliable' expertise as it pertains to issues of toxicology and police practices.

DEFENDANTS' MOTION IN LIMINE #4

1    Fourth, Dr. Singhania has not demonstrated any 'methodology' relating to

2    opinions of toxicology or police practices.

3    Fifth, the presentation of these opinions by Dr. Singhania would be unduly

4    prejudicial to defendants.  <u>See</u> Section C, *infra*.

5    As such, it is submitted that where Dr. Singhania does not meet the requisite

6    standards to offer expert opinions about toxicology and police practices, such

7    opinions should be excluded at the time of trial.

8    **C.    <u>Any Opinions Offered By Dr. Aruna Singhania Regarding</u>**

9    **<u>Toxicology And Police Practices Issues Are Irrelevant And</u>**

10    **<u>Prejudicial.</u>**

11    Federal Rules of Evidence, Rule 402 provides that evidence which is not

12    relevant is not admissible. F<small>ED</small>. R. E<small>VID</small>. 402; <u>United States v. Schaff</u>, 948 F.2d

13    501 (9th Cir. 1991).  Evidence is relevant if it has any tendency to make the

14    existence of any fact that is of consequence to the determination of the action more

15    or less probable than it would be without the evidence. <u>See</u> F<small>ED</small>. R. E<small>VID</small>. 401.

16    In this case, issues relating to toxicology and police practices are relevant to what

17    will be decided at trial.  However, Dr. Singhania's opinions on the level of

18    methamphetamine and the type or manner of the neck hold used on the decedent is

19    irrelevant because she has acknowledged that she is not an expert in either field.

20    Dr. Singhania is the proper person to discuss the autopsy performed on the

21    decedent and the findings from said autopsy, but opinions about issues for which

22    she is not qualified to discuss will not "make the existence of any fact that is of

23    consequence to the determination of the action more or less probable than it would

24    be without the evidence."  Thus, Dr. Singhania' opinions about the levels of

25    amphetamine and methamphetamine found in the decedent's system and the

26    specific types of police practices used during the subject incident are simply not

27    relevant and should be excluded.

28    In addition to the lack of probative value, Dr. Singhania's opinions

- 10 -

regarding toxicology levels and police practices issues would be highly prejudicial to defendants.  Federal Rule of Evidence, Rule 403 authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  See FED. R. EVID. 403; see also Old Chief v. United States, 519 U.S. at 180. In Liew v. Official Receiver and Liquidator, 685 F. 2d 1192 (9th Cir. 1982), the Ninth Circuit held that trial courts have, "very broad discretion in applying Rule 403 and absent abuse, the exercise of its discretion will not be disturbed on appeal."  Citing to Ballou v. Henri Studios, 656 F.2d 1147 (5th Cir. 1981), the Advisory Committee note to Rule 403 states:

> Unfair prejudice is that which could lead the jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence . . . . unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material . . . . Unfair prejudice within the context of Rule 403 means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.

FED. R. EVID. 403, Adv. Comm. Note (citing Ballou, 656 F.2d 1147).  Indeed, the admission of evidence that is so inflammatory and irrelevant can, under some circumstances, constitute reversible error. See Brandom v. United States, 431 F .2d 1391 (7th Cir. 1970).  A variety of circumstances warrant exclusion of evidence on the basis of unfair prejudice, ranging from "inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme."  FED. R. EVID. 403, Adv. Comm. Note.

Any opinions offered by Dr. Singhania regarding toxicology levels and

1  police practices would most certainly confuse the issues, mislead the jury, and

2  constitute the needless presentation of cumulative evidence [where both sides can

3  present evidence from qualified experts concerning toxicology and police practices

4  issues].  In such a scenario, it is submitted that such opinions are inadmissible

5  under Rule 403

6  **IV.     CONCLUSION**

7          Based on the foregoing, the defendants respectfully request that this Court

8  enter an order excluding any evidence, argument or testimony from Dr. Aruna

9  Singhania concerning: (1) her opinions on the levels of methamphetamine and

10  amphetamine found in the decedent's body and (2) her opinions on police practices

11  and neck restraints.

12

13  DATED:   February 25, 2019          CARPENTER, ROTHANS & DUMONT

14                                                              /s/  Jill Williams

15                                            By:  _____

16                                                   Steven J. Rothans

17                                                   Jill Williams
                                                     Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION IN LIMINE #4

## <u>DECLARATION OF JILL WILLIAMS</u>

I, Jill Williams, declare that:

1.     I am an attorney, duly licensed to practice law before all of the courts in the State of California, and a partner at the law firm of Carpenter, Rothans & Dumont, attorneys of record for the defendants in this case.

2.     This declaration is made in support of the defendants' Motion in Limine # 4 in the consolidated civil action entitled <u>Fermin Vincent Valenzuela v. City of Anaheim, et al.</u>, bearing case number SACV17-00278 CJC (DFMx).

3.     Attached hereto as Exhibit "A" is a true and correct copy of the plaintiffs' expert witness designations (excluding the Rule 26 reports prepared by the retained experts).

4.     Attached hereto as Exhibit "B" is a true and correct copy of the relevant portions of the deposition transcript of Dr. Aruna Singhania was taken in connection with this matter on or about November 28, 2018.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 25th day of February 2019, at Los Angeles, California.

/s/ Jill Williams

_____

JILL WILLIAMS – Declarant

DECLARATION OF JILL WILLIAMS